JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Bennett J. Vonderheide
AKA Daddy Justice

## DEFENDANTS
The Harrisburg Area Community College et al.

**(b)** County of Residence of First Listed Plaintiff: Lancaster
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Lancaster
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 4101 & 1st Amendment U.S. Constitution

Brief description of cause:
Civil Rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 7/16/19

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __345 Valley Road, Conestoga, PA 17516__

Address of Defendant: __1641 Old Philadelphia Pike, Lancaster, PA 17602__

Place of Accident, Incident or Transaction: __The Harrisburg Area Community College__

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __7/16/19__   _____   _____
                     *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.  Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☒ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
     *(Please specify):* _____

**B.  Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____
                  *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Bennett J. Vonderheide AKA Daddy Justice | : | CIVIL ACTION |
| v. | : | |
| The Harrisburg Area Community College et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X)

| July 16, 2019 | Bennett J. Vonderheide *Pro Se* | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 717 872-4018 | | Ben@daddyjustice.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

CIVIL ACTION - LAW

BENNETT J. VONDERHEIDE
AKA DADDY JUSTICE

          V.          :    No.

:

THE HARRISBURG AREA COMMUNITY COLLEGE
JOHN J. SYGIELSKI/PRESIDENT
VICTOR E. RAMOS/VICE PRESIDENT IN CHARGE OF LANCASTER BRANCH
IVAN A. QUINONES/DIRECTOR OF SECURITY
WILLIAM C. RIVERA/SUPERVISOR OF SECURITY LANCASTER BRANCH
SARA CRILL/HACC PROFESSOR
MATTHEW CRILL/HACC PROFESSOR

(Jury trial demanded)

Notice

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

   YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

   IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lancaster Bar Association

28 East Orange Street Lancaster Pa 17602

717 397-0737

1

## PLAINTIFF'S COMPLAINT FOR VIOLATION OF
## CIVIL AND CONSTITUTIONAL RIGHTS

### JURISTICTION AND VENUE

1. This Court has jurisdiction of this matter under 28 U.S.C 1331, 1343(a)(1), 1343(a)(3), 1343(a)(4), 42 U.S.C. 1983, and the first amendment of the United States Constitution
2. Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. 1391(b) in that all parties reside and work and all the acts and omissions given rise to the claims stated herein occurred in the county of Lancaster in the State of Pennsylvania.

### PARTIES

3. Bennett J. Vonderheide is an adult individual who resides at 345 Valley road, Conestoga PA 17516, within Lancaster County Pennsylvania
4. Harrisburg Area Community College is a business operating at 1641 Old Philadelphia Pike, Lancaster PA. 17602
5. SARA CRILL is an adult individual who is employed by Harrisburg Area Community College with offices and school located at 1641 Old Philadelphia Pike, Lancaster PA. 17602
6. MATTHEW CRILL is an adult individual who is employed by Harrisburg Area Community College with offices and school located at 1641 Old Philadelphia Pike, Lancaster PA. 17602
7. WILLIAM C. RIVERA is an adult individual who is employed by Harrisburg Area Community College with offices and school located at 1641 Old Philadelphia Pike, Lancaster PA.
8. IVAN A. QUINONES is an adult individual who is employed by Harrisburg Area Community College with offices and school located at 1641 Old Philadelphia Pike, Lancaster PA.
9. VICTOR E. RAMOS is an adult individual who is employed by Harrisburg Area Community College with offices and school located at 1641 Old Philadelphia Pike, Lancaster PA.
10. JOHN J. SYGIELSKI is an adult individual who is employed by Harrisburg Area Community College with offices and school located at 1641 Old Philadelphia Pike, Lancaster PA. Officer

### FACTS OF THE CASE

### DADDY JUSTICE BACKGROUND
### LANCASTER'S VIDEOGILANTE

11. Plaintiff AKA Daddy Justice is Lancaster's only investigative internet muckraker and highest profile first amendment champion. Plaintiff specializes in helping victimized fathers/children and falsely accused. Hundreds of DJ videos have been produced and aired on the World Wide Web exposing corruption/helping desperate individuals get justice and children have their parents. Many of these have exposed lying, corrupt cops. Daddy Justice Films is the only independent press that aggressively investigates, films and exposes bad cops, judges and lawyers in this town. Recent investigation has uncovered state wide pension fraud by police officers.
12. Plaintiff has faced more false accusations and false charges than anyone in Lancaster legal history. Plaintiff has beaten almost all charges, though police have committed perjury and/or

2

suborned perjury in all trials they have only a couple successful railroadings. Film and audio recordings have proven Plaintiff innocence and false accusers' perjuries time after time. One repeat accuser is the only woman ever convicted of perjury in custody court in America after testifying against Plaintiff.

13. Then district attorney (now judge) Donald Totaro effected six expungements in Lancaster County prior to leaving office and DA Marsico (now judge) in Dauphin County has likewise effected expungements for charges Plaintiff faced and beat
14. This history transpired over 17 years. The pattern is standard for those in power who see themselves as above accountability. Falsely accuse the investigator to deflect and derail any investigation into their wrongdoing.
15. Plaintiff has witnessed how police departments and security forces such as at HACC close ranks using any means at their disposal including false accusations, defamation and official oppression to create a chilling impact upon Plaintiff's first amendment protected actions.
16. This renders locations dangerous and impossible for Plaintiff to safely carry out missions.
17. False accusation, threats and attempted intimidation, including threats of arrest and legal action have been repeatedly used to create a chilling impact upon Plaintiff first amendment missions making it dangerous, deadly and finally impossible for Plaintiff to safely carry out these missions and this must STOP NOW!

## FACTS OF THE INCIDENT AND FALSE ACCUSATIONS PURSUANT

### FACTS OF INCIDENT (actual)

18. Thursday April 11th 2019 Plaintiff visited Harrisburg Area Community College campus in Lancaster PA.
19. Plaintiff made contact with exactly four individuals in total whom are all employed by the college in various positions.
20. Plaintiff was on campus for a short period of time.
21. Plaintiff identified and provided his card as Daddy Justice/ Independent filmmaker and wore a jacket with the Daddy Justice "For the Love of a Child" emblem prominently exhibited on the back and front.
22. Plaintiff marked and measured words carefully thus Plaintiff can attest absolutely that he made no derogatory comments about anyone nor did Plaintiff mention any professors' name at any time.

### FALSE ACCUSATIONS PURSUANT

23. Thereafter Plaintiff received a phone call from HACC professor Matthew Crill asking why Plaintiff was on campus in his words… "Asking about the welfare of his children and why Plaintiff was telling coworkers that his wife, Professor Sara Crill is a bad mother".
24. Plaintiff asked Professor Crill who accused Plaintiff of making these statements and was advised that every person Plaintiff had spoken on campus had said the same thing.
25. Plaintiff stated that he had spoken to four people and asked if Professor Crill was saying all four had accused him of saying these things?
26. Professor Crill stated emphatically that yes they did.
27. Plaintiff advised Professor Crill that they all lied.

3

28. Professor Crill then asked 'Why would they all lie" (a very good question).
29. Thereafter Plaintiff received information that Professor Crill had contacted his father in regards to this matter.
30. Plaintiff was informed Professor Crill sent a text message to his father which reflects the conversation and which asks "Why do you have Ben going to Sara's work and asking people if they are concerned for Ava's welfare - He has been telling Sara's coworkers that Sara is a terrible mom - This needs to stop, immediately
31. Thereafter Plaintiff received information that after refusing to meet his grandfather for months Professor Crill suddenly met him for breakfast asking what his grandfather knew of Plaintiff being on campus.
32. None of the above individuals had any advanced knowledge and the first they heard was from Professor Crill
33. For the record Plaintiff came to HACC of his own accord… No one directs Plaintiff actions.
34. Plaintiff was there because it is an open campus and Plaintiff can come there as a member of the public.
35. While in Lancaster City Plaintiff witnessed the side of a bus advertising and beckoning the public to come check out HACC campus.
36. There have also been pop ups on Plaintiff computer advertising and inviting him and TV spots galore.
37. Security is enforcing/maintaining campus as a "Politically Correct safe zone" while inviting anyone from the public which could include those with positions or opinions that are not "PC".
38. Thereafter Plaintiff received information that Professor Crill had made statements threatening that legal action could be forthcoming (such as a restraining order or protective order) keeping Plaintiff off campus based upon the accusations above.
39. This lays the groundwork for fraudulent legal filing which could then be waved around campus and elsewhere to paint Plaintiff's presence as suspect and dangerous which is categorically false.
40. They could then maliciously and wrongfully broadcast that Plaintiff *had to be restrained and they had to be legally protected. That Plaintiff will be arrested if comes on campus, etc, etc, etc.*
41. Obviously the intent is to deflect and block the *perceived* investigation into the welfare of children *which only they had suggested to date.*
42. Thereafter Plaintiff received a phone call from Supervisor of Security William C. Rivera
43. He began to grill Plaintiff accusing him of causing a disturbance on campus and intoning the same accusations as Professor Crill
44. Mr. Rivera essentially accused Plaintiff of defaming Professor Sara Crill to Jen and others.
45. Plaintiff advised him for the record of exactly and precisely the statement Plaintiff made after introducing himself to Jen. That being "I understand we have a mutual connection… little Ava Crill and her brother Sammy"
46. Officer Rivera twisted Plaintiff words and accused him by saying "so you were looking for a little girl" on campus.
47. Plaintiff warned Rivera not to say such again and repeated more firmly the above accurate statement and officer Rivera tried again to twist and misrepresent the facts by accusing Plaintiff saying "so you were trying to find a little girl" on campus. [What an evil man to spew such perverse deceit and treachery]
48. For the record:
49. Plaintiff has known these two children since infants.

4

50. Being a weekday afternoon Plaintiff knew they were in school.
51. Plaintiff had recently seen them at Ava's school choir event where she saw and waved at Plaintiff before the concert and came up and spoke with him after the show.
52. Plaintiff also said hello to Sammy.
53. As with all events throughout the children's lifetime Plaintiff was invited by family.
54. Officer Rivera then made comment he was concerned if Plaintiff could maintain emotional control.
55. It is true Plaintiff was deeply torqued off and infuriated by Rivera's attempt to paint him as a 59 year old man trying to find a little girl on the campus.
56. In fact Plaintiff has had trouble sleeping and woken up angry just thinking about the attempt to defame in the worst way possible.
57. The impact upon Plaintiff reputation by such a statement and the effect on Plaintiff's ability to accept missions protecting children if people were to believe this lie is devastating.
58. Anyone would be deeply upset by such despicable tactics and by such a low down person who pulls this rat trick.
59. After being boxed in by Plaintiff and truth, at the close of the conversation Supervisor Rivera agreed that as per his notes Plaintiff had made no disparaging remarks to three of the four individuals Plaintiff was accused of making the statements to.
60. William demanded that Plaintiff should have come to his office first if investigating on campus yet his actions demonstrate why this is imprudent in that security forces can be controlled wrongfully by staff and especially profs.
61. Thus security can breach any stealth and thwart any righteous investigation impeding and intimidating potential whistle blowers.
62. I strongly demanded in the interest of the first amendment that security and professors familiarize themselves with Melissa Click who was fired from the University of Missouri after being captured on video, during a campus protest, asking for "some muscle" to chase away a photojournalist.

## CHILLING IMPACT ON FIRST AMENDMENT AND DEFAMATORY STATEMENTS/ POTENTIAL ENDANGERMENT TO CHILDREN:

63. The conjoined actions of Defendants was clearly intended and did cause a chilling impact upon Plaintiff's first amendment rights and did slander his name as a method and tool of deflection.
64. The result was the message being received of clear and present in fact eminent danger if Plaintiff returned to the public areas of Harrisburg Area Community Colleges.
65. All Defendants did "circle their wagons" and create a culture of treachery after they, without any outside suggestion or mention, determined Plaintiff was on premises to investigate Professor Sara Crill. Specifically in regard to, as Professor Matthew Crill stated, being "concerned for Ava's welfare" and "that Sara is a terrible mom".
66. These conditions have continued unabated from April 11th 2019 until this day and unless this court takes action will remain intact ad infinitum.
67. The effect of this violation on Plaintiff has ramifications upon any and all citizens who would enter upon the grounds of HACC with the wrongful understanding that their Constitutional and Civil rights were protected. Rights including freedom to ask questions which are not popular.

5

68. Including and especially if as Professor Crill has assumed (out of apparent guilty conscious) the questions are part of an investigation directed towards exposure of child abuse and protecting the welfare of children , even if the perp is a Professor.
69. The fact that Defendants hold positions of esteemed academic and law enforcement credibility and have a position of respect and believability/honor associated magnifies the impact of their false accusations and the chilling impact.
70. There is no doubt these individuals have the power and position to falsely accuse and carry through to malicious prosecution on their lies with no compunction.
71. Their previous actions demonstrate they have zero concerns for children and only care about their professors and the reputation of the institution.
72. That they will join forces and protect their professors and their "HACC family" and
73. That Plaintiff is in danger if he goes to HACC and
74. That his reputation will continue to be smeared unless these statements are stopped and retracted.
75. The most compelling and disgusting result is the fact that the actions of Defendants leave these children in the lurch and abandoned in their time of need.
76. Plaintiff now acknowledges that he has evidence of abuse and that he was in fact attempting to identify and make contact in the best interest of the children. [Though as detailed the actions of Defendants thwarted his mission]
77. Plaintiff points out to the court that he had informed no one that he was going to HACC nor why. Thus the fact Defendants automatically assumed Plaintiff was looking into Sara Crill's abusive mothering is an amazing, alarming and revealing response.
78. Plaintiff is deeply concerned knowing the children have been systematically removed from the individuals who have cared and loved them since birth.
79. They have been removed from adults they could confide in and are surrounded by those who will sacrifice them for personal and selfish reasons as defendants have demonstrated herein.
80. Plaintiff has experience in previous investigations wherein this pattern has been carried out to protect abusive parents from being exposed.
81. Plaintiff has witnessed for years that it has been other relatives who have taken daily care of Ava and Sammy Crill while their parents pursued their careers and placed their financial and social status far above the children.
82. Plaintiff will demonstrate and prove in trial evidence which would compel any righteous investigative reporter or even a caring citizen to take action in protection of potentially endangered children.
83. There is currently a web site named saracrill.com and saracrillhacc.com which this court may avail itself of for in camera review to witness first hand some of the evidence which compels Plaintiff in protection of these children.
84. At time of trial Plaintiff will provide the quotes from Ava and her brother Jonah wherein they identify the abusive behaviors.
85. In the interim the court can review some of these quotes and listen to the desperate voice of Ava Crill crying and asking her Grandfather to help and protect her from her abusive mother at saracrill.com.

6

Ava from audio recording: Sobbing and terrified.
"My mom just threw a bag at me and hit me, she's so (word unintelligible) to me...
I'm really scared"
"Mom hit me with a bag... and I don't know what to do"

Ava from conversation:
At 9PM on April 12th 2018, a school night, Dave Crill's phone rang.
It was Ava speaking while sobbing uncontrollably. Her first words could not be understood except for "come get me", she then contained herself strong enough to speak.
Pop Pop: "Ava, please, its OK Pop Pop's here. Take a deep breath and tell me what's wrong."
Ava: "Pop Pop, you have to come get me. I can't take it anymore. I'm going to leave."
P: "What is happening honey. Please tell me."
A: "They won't stop yelling at me. They've been yelling at me since I got home from school."
P: "OK. OK. Have they hurt you?"
A: "I'm going to leave."
P: "Ava, please promise me that you won't go outside unless they've hurt you. Promise me."
A: "Pop Pop, I'm really scared."
P: "I know. I can tell. Where are you calling from?"
A: "I am downstairs."
P: "Where are your parents?"
A: "They are in their bedroom."
P: "Ava, if we come to get you, we would never be allowed to see you again. If they know you are calling me they will be even angrier. Go back to your room, take the phone, close your door, put something under the door so they can't open it. OK?".
A: "OK."
P: "Get back in bed. Close your eyes and go to sleep."
A: "I can't Pop Pop, I know they will hurt me after I'm asleep."
P: "If you hear them trying to get in your room, dial 911. Tell the person who answers that you need the police to come right away because your parents are going to hurt you'"
A: "OK Pop Pop,. But I'm really scared.
P: "I know. After you call the police, if you have to, call me, OK?"
A: "OK Pop Pop, I will."
P: "Is this just your mom screaming at you?"
A: "No, its dad too."
P: "I'm so sorry honey. Please go to your room. Block the door. Do not go outside. Promise?"
A: "I promise."
P: "I love you Ava. I'll check on you in the morning at school."
A: "I love you too Pop Pop."
P: "Goodnight."
A: "Goodnight."

Jonah (Ava and Sammy's older brother): "Mom came home and was yelling at Matthew all night. When she woke up in the morning she started screaming at him again".

When asked "What did Matt do that made her so angry" he replied "She said she had a really bad day at work" He was then asked 'What's that like when she yells" replying "It's really scary".

7

On another occasion
Jonah "I was really scared this morning"
Sibling "I was really scared too"
Adult 'What were you scared about Jonah".
Jonah replied "I'd rather not say"
Sibling "Tell him Jonah"
Adult "Jonah, how is it a big kid like you, blackbelt, football player and weightlifter is afraid of something – What were you afraid of?"
Jonah "I was afraid of mom, she was screaming at me and I was scared
Adult "I know what that's like, it is very scary, did she hit you?"
Jonah "No"

86. The actions of Defendants left these children in a position where they are potentially endangered and those who may be abusive are empowered and emboldened in their abuse.
87. Special condition taken advantage of: Plaintiff has been falsely accused and vindicated of more crimes than any other person in the history of Lancaster County as detailed above.
88. For over seventeen years corrupt officials and individuals utilized their primary weapon, that being the false accusation and willingness to commit felony perjury.
89. Plaintiff has defended himself, pro se in most instances, and won including the expungements initiated and filed by two separate district attorneys in two counties (both currently sitting judges).
90. Defendants have taken advantage of this long standing official oppression knowing they only have to find a way to falsely accuse Plaintiff. Then have one or more of their dishonest co-workers, leadership and security forces commit what is referred to in the industry as "accommodation perjury".
91. The fact that the security officers participated raises the threat to a heightened level!
92. Once this pattern is established no visitor is safe at HACC if the regime determines they want them eliminated from campus for any reason.

## CEASE AND DESIST AND DEMAND LETTER PROVIDED TO DEFENDANTS

93. On 4/18/19 Plaintiff served a Demand letter upon all Defendants in an attempt to stop further damages and resolve the matters raised by their wrongful actions. The letter included the following:
94. CEASE AND DESIST: Plaintiff hereby DEMANDS that the above-listed individuals and organization CEASE AND DESIST from the defamatory statements against me and furthermore to stop attempts to defame, slander or otherwise impugn Plaintiff reputation through the use of false accusations and official oppression under color of law. Plaintiff also DEMANDS you sign retraction of the defamatory, falsely accusing statements for the record! This is an attack on a first amendment warrior and child's advocate not by the average Joe but with the weight and credibility of security, professors and employees of HACC Lancaster Campus. This must be stopped and remedied!
95. The letter provided Defendants simple and honest actions they could take to resolve this matter as follows:

96. "RESPOND IN WRITING SATISFYING THE MATTERS BELOW TO AVOID FURTHER ACTION:... Acknowledge the following in writing to provide me documentation to defend and counter aforementioned statements:"
97. That Plaintiff never mentioned any professors' name to the two receptionist in the main entrance reception area.
98. That Plaintiff made no disparaging statements about anyone to the two receptionist in the main entrance reception area.
99. That Plaintiff never mentioned any professors name to your security officer in uniform who appeared in Jen's office and with whom Plaintiff then conversed.
100. That Plaintiff made no disparaging statements about anyone to your security officer in uniform with whom Plaintiff conversed.
101. That Plaintiff never mentioned any professors name to Jen the receptionist in office #206 [It is true that after Plaintiff began to walk away Jen said "There is a Sara Crill in the office across the hall" which prompted Plaintiff reply "Yes, Ava and little Sammy Crill" but Plaintiff did not ever mention Sara by name while on campus]
102. That Plaintiff made no disparaging statements about anyone to Jen the receptionist in office #206
103. That Plaintiff made no negative or disparaging remarks about anyone while Plaintiff was on the HACC campus nor did Plaintiff mention the name of any professor to anyone period!
104. That Plaintiff did not go on campus and as accused "asking people if they are concerned for Ava's welfare... telling Sara's coworkers that Sara is a terrible mom"
105. That Plaintiff did not come onto campus "looking for a little girl" or "trying to find a little girl". That any such reference by campus personnel or security was incorrect and ill spoken and does not reflect Plaintiff actions!

## REFUSAL TO RESPOND TO EMAIL AND PERSONAL SERVICE

106. To this date [7/16/19] all Defendants refused to reply or offer settlement in any form including but not limited to retraction of false statements and officially notifying Plaintiff he could return to the college freely and speak with individuals freely as any other citizen or investigative reporter.

## DEFENDANTS MATTHEW AND SARA CRILL RESPOND WITH FURTHER FALSE ACCUSATIONS AND THREATS

107. On June 1st 2019 (though letter is dated 6/3/19) Defendants "Professors" Sara and Matthew Crill provided the only response from all parties via a notice to cease and desist and notice against trespass letter delivered certified mail to Plaintiff in which they included the following:
108. Instead of admitting the previous false accusations and retracting the lies they compound this matter on behalf of all by further accusing Plaintiff "You have engaged in a course of conduct that is harassing, repeated, annoying, unwanted, serves no legitimate purpose, and has caused substantial emotional distress".
109. These accusations are completely false primarily in that Plaintiff has absolutely not engaged in the course of conduct he is accused of and additionally in that any and all of Plaintiff's actions do serve a legitimate purpose as detailed above. To investigate alleged and now proven by witness testimonial and recorded voice, child abuse and possible child endangerment.

9

110. The notice also states "This includes communication through a third party and communication at a Crill place of employment, worship, residence, or any other location where the Crill family may be found."
111. Thus it is understood by Plaintiff that any legitimate appearance at these limitless, unidentified and undiscernible locations or any words spoken to anyone who could be considered a third party could be twisted and lied about (as Defendants have demonstrated is their pattern) to bring criminal charges and further malicious prosecution on behalf of these highly respected college professors and with the support of HACC.
112. This language is a clear attempt to set into place the mechanisms of malicious prosecutions which Plaintiff has been subject to in the past and which these Defendants are well aware.
113. Defendants are counting on law enforcement's bias and deep desire to block Plaintiff's investigations into corruption and crime by those behind the thin blue line.
114. The Crill "Notice" then states "Should you choose to disregard this notice you may be subject to criminal and/or civil consequences."
115. Plaintiff has been advised that Matthew Crill has verbally threatened to call the police on Plaintiff if he appears at any function wherein the Crills are in attendance and will attempt to have Plaintiff arrested.
116. Plaintiff has not attended events he previously attended to protect the children from embarrassment and avoid possible false accusations followed by false arrest, malicious prosecutions and/or wrongful civil action as threatened.
117. This demonstrates emphatically and critically the need for legal action to set this matter right before it results in further intimidation and blocking of Plaintiffs first amendment rights, impacts his reputation and potentially physical freedom and safety. [And other unsuspecting visitors to HACC]
118. Also to allow Plaintiff to continue his efforts on behalf of the Crill children and others to follow.

### FURTHERANCE OF CHILLING IMPACT ON FIRST AMENDMENT AND DEFAMATORY STATEMENTS/ POTENTIAL ENDANGERMENT TO CHILDREN

119. This "Cease and desist and notice against trespass letter" furthers the impact, pattern of threats and abuse of civil and constitutional rights precisely as detailed above in #63 - #92.
120. The legal function and effect of this document is to serve notice upon Plaintiff that if he appears anywhere the Crills and/or their children are he is in eminent danger.
121. That if Plaintiff asks any questions of any one whatsoever about the children he is in danger of false arrest, malicious prosecution and/or civil action.
122. This document compels Plaintiff to seek redress and protection from a court of law to protect himself not only in his constitutionally protected work as an investigative reporter but in his very right to move freely and pursue happiness in public and semipublic areas.
123. Plaintiff will demonstrate at time of trial another incident proving this pattern. The leader of the swim team the children belonged to was stealing money and Plaintiff confronted the board and others. They immediately issued Plaintiff a trespass letter very similar to the Crill letter which did create an atmosphere where Plaintiff did not attend any further swim meets nor contact any parents or board members further.

124. Fortunately, Plaintiff was able to persuade action from behind the scenes without attendance and the criminal now faces numerous years in prison for numerous felonies. The stolen money will be recovered for the children and their parents to use for the swim team.
125. Thus this has become the default tactic when Plaintiff begins to expose corruption or child endangerment.
126. Since April 11th, 2019 Plaintiff has been unable to act in his constitutionally protected work and has been severely hamstrung in his attempts to expose the conditions the children live under and protect them from possible abuse.
127. Any and all abusive behaviors the children have suffered since that date can be partially attributed to Harrisburg Area Community College, the leadership all the way to the office of president "Ski" as he goes by and campus security.
128. Of course the primary responsibility remains with Sara Crill for not addressing her issues to be a better mother and Matthew Crill for being too cowardly to stand up for his own children when they are being abused. [Both are professors in medicine and promote others accepting help for issues]

## COUNT ONE - INTENTIONAL TORT
## FIRST AMENDMENT VIOLATION

129. Plaintiff incorporates paragraphs 1 through 128 as if fully set forth herein
130. Plaintiff contends and therefore avers the actions of Defendants were retribution for his, at the time, "Perceived" investigation into Professor Sara Crill and Professor Matthew Crill's possible abuse of their children.
131. The printing press shall be free to every person to undertake to examine the proceedings of the legislature or any branch of government… The free communication of thoughts and opinions is one of the invaluable rights of man…
132. Plaintiff contends and therefor avers Defendants are intending to have a chilling impact upon his first amendment investigation and potential reporting
133. As the Supreme Court noted in another context, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).
134. But the right to free speech is not just about the law; it's also a vital part of our civic education. As Supreme Court Justice Robert Jackson wrote in 1943 about the role of schools in our society: "That they are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes." Remarkably, Justice Jackson was referring to grade school students. Inculcating constitutional values — in particular, the value of free expression — should be nothing less than a core mission of any college or university. (ACLU)
135. As recently as March 2nd 2019 "President Trump said that he planned to issue an executive order that would help guarantee free speech at colleges and universities by putting their federal aid at risk if they do not protect the viewpoints of students of all political stripes".
136. Plaintiff was carrying out a constitutionally protected action of simply being within the public areas of Harrisburg Area Community College, Lancaster Pennsylvania Campus.

137. It is noteworthy that while Plaintiff is preparing this suit he again received invitation to come to HACC Lancaster, via a 28 page color brochure in his US mail box.
138. Plaintiff has also been invited via advertisements on the side of buses, television and on his internet (unsolicited).
139. Come to HACC but if you ask questions or say bad things about our professors you will be threatened, falsely accused and eliminated from the premises… AND defamed/ruined as best they can.
140. Even if Plaintiff had asked embarrassing questions and made derogatory statements about a specific professor to the full extent he has been accused of doing this still remains squarely within the rights of the first amendment. Investigative reporting and news gathering are the exact tools available to fight corruption which the Constitution was intended to protect.
141. Defendants essentially accuse Plaintiff of acting to protect children and expose eminent danger that may exist, actions certainly protected and supported by law.
142. Defendants' retaliatory actions are more than sufficient to deter a person of ordinary firmness from exercising his constitutional rights.
143. The threat of arrest and/or having to defend against civil action from a college and professors would cause any person of even extra firmness to cease investigating and even appearing in public areas which have been loosely identified in trespass letter.
144. Knowing that as soon as Plaintiff would appear on campus, security officers will be making threatening contact and the staff will falsely accuse him forces Plaintiff to be blocked from campus by an invisible barrier.
145. The defamation of Plaintiff's character and his investigative activity can have a damning impact upon Plaintiff's ability to continue to have profound, righteous and life changing impact upon those who are being victimized and are hopeless without the Daddy Justice effect.
146. Based upon history Plaintiff knows that individuals and institutions of such high esteem can initiate malicious prosecutions and defamation campaigns essentially squashing and eliminating a single unprotected individual.
147. Plaintiff has suffered many false prosecutions and the thought of going another round (even when Plaintiff wins in court it takes year or more of emotional and mental torture to get through) is daunting and has forced him to discontinue actions he would have taken. Actions which would have been not only constitutionally protected but which would protect innocent children in peril
148. There is an obvious and undeniable "causal link between the constitutionally protected conduct and the retaliatory action."
149. Plaintiff has only visited HACC Lancaster one time in the recent past and was only on campus for a short period of time.
150. Thereafter, Plaintiff has spoken to security, the president and Matthew Crill but about and only about the events of April 11th 2019.
151. There is no other event or series of events which could possibly be the cause of the actions of retribution herein contained.
152. Defendants actions immediately followed the visit on April 11th 2019 demonstrating a temporal proximity between the protected activity and the Defendants retaliatory actions
153. As detailed above Defendants have carried out a pattern of intimidation, false accusations and threats coupled with timing to establish a causal link
154. Plaintiff as a citizen of the United States and investigative reporter was deprived of his first amendment right through the intimidation, defamation and threats of malicious legal action

12

including but not limited to prosecution as detailed above for which he seeks damages exceeding $50,000

155. Plaintiff also requires the return of his freedom to visit HACC at any campus and to investigate any story and furthermore to freely attend public events including swimming events, school events and other places and events open to him as a member of the public.... Without threat of false arrest or malicious civil action

WHEREFORE, Plaintiff demands a trial by jury and judgement from the court as follows:
Find in favor of Plaintiff against all Defendants and award compensatory and punitive damages to Plaintiff for Defendants actions as detailed above
Order Defendants to pay an award of attorney fees and cost to Plaintiff
Order any other relief deemed reasonable and appropriate by the court

## COUNT TWO- INTENTIONAL TORT
## DEFAMATION OF CHARACTER/LIBEL/SLANDER

156. Plaintiff incorporates paragraphs 1 through 155 as if fully set forth herein
157. Defendants conduct and statements as alleged were intentionally designed to besmirch the credibility, honesty and reputation of Plaintiff and Daddy Justice Films/DaddyJustice.com, cause him grave emotional pain, have the police/security called on him as harassment, try all means to have him falsely arrested, charged and put into prison.
158. The statements clearly referred to and identified Plaintiff as per William Rivera in his position as supervisor of security and in text messages from Professor Crill and the trespass letter.
159. The statements were defamatory and false.
160. The statements were lies designed to intentionally do Plaintiff damage and they did so.
161. The above actions constitute defamation through slander to the good name and reputation of Plaintiff for which he seeks damages exceeding $50,000.
162. Plaintiff has for seventeen years built his reputation as honest and a champion for children and adults in terrible peril.
163. This allows his tactics and work to continue benefiting those in need which work is in danger if Defendants are permitted to soil and defame Plaintiffs historical and accurate reputation in the community.
164. Plaintiff has been paid for his work before and his ability to continue such revenue stream is impacted by Defendants actions and statements
165. Plaintiff is the focus and proposed "break out star" on a television program currently being pitched to network and alternative platforms.
166. The wrongful and purposeful lies perpetrated by Defendants and continuing to this date can have an extremely damaging impact on this future revenue source.
167. Plaintiff suffered emotional, mental and physical distress.
168. Plaintiff lost his sense of freedom and spent sleepless nights and excessive time, has lost potential income and suffered further damage to his reputation and standing in the community.
169. Plaintiff has suffered knowing he has been unable to adequately investigate and therefor protect these children.

WHEREFORE, Plaintiff demands a trial by jury and judgement from the court as follows:

13

Find in favor of Plaintiff against all Defendants and award compensatory and punitive damages to Plaintiff for Defendants actions as detailed above
Order Defendants to pay an award and cost to Plaintiff
Order any other relief deemed reasonable and appropriate by the court

Bennett J. Vonderheide pro se
DATE:

## VERIFICATION

I, BENNETT J. VONDERHEIDE, verify that the statements made in this document are true and correct. Plaintiff understand that false statements herein are made subject to the penalties of 18Pa. C.S. § 4904, relating to unsworn falsification to authorities.

BENNETT J. VONDERHEIDE
*pro se*
Date: 7/15/19

14

**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA**

**CIVIL ACTION - LAW**

BENNETT J. VONDERHEIDE
AKA DADDY JUSTICE

:

V. : No.

:

THE HARRISBURG AREA COMMUNITY COLLEGE
JOHN J. SYGIELSKI/PRESIDENT
VICTOR E. RAMOS/VICE PRESIDENT IN CHARGE OF LANCASTER BRANCH
IVAN A. QUINONES/DIRECTOR OF SECURITY
WILLIAM C. RIVERA/SUPERVISOR OF SECURITY LANCASTER BRANCH
SARA CRILL/HACC PROFESSOR
MATTHEW CRILL/HACC PROFESSOR

(Jury trial demanded)

**CERTIFICATE OF SERVICE**

I hereby certify that Plaintiff is this day serving the foregoing document upon the person(s) and in the manner indicated below, which service satisfies the requirement of FRCP Rule 4 (c)(1) & FRCP Rule 4 (c)(2).

1) Service by Hand Delivery to the Harrisburg area community college DATE ________

2) Service by Hand Delivery to John J. Sygielski DATE ________

3) Service by Hand Delivery to Victor e. Ramos DATE ________

4) Service by Hand Delivery to Ivan a. Quinones DATE ________

5) Service by Hand Delivery to William c. Rivera DATE ________

6) Service by Hand Delivery to Sara Crill DATE ________

7) Service by Hand Delivery to Matthew Crill DATE ____________

By: ______________________________
BENNETT J. VONDERHEIDE
*pro se*