THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BENNETT J. VONDERHEIDE : 
aka DADDY JUSTICE, : 
 : 
          Plaintiff, :       CIVIL ACTION NO. 19-3096
 : 
   v. : 
 : 
THE HARRISBURG AREA : 
COMMUNITY COLLEGE, JOHN J. : 
SYGIELSKI, VICTOR E. RAMOS, : 
IVAN A. QUINONES, : 
WILLIAM C. RIVERA, SARA CRILL, : 
and MATTHEW CRILL, : 
 : 
        Defendants. : 

## MEMORANDUM OPINION

Smith, J.                                              October 23, 2019

      The *pro se* plaintiff originally commenced this action claiming that the defendants violated his First Amendment rights when they purportedly retaliated against him after he entered the campus of the defendant community college and contacted four of its employees. Although the complaint does not discuss the substance of the plaintiff's conversations with the four employees, two of the defendants, who are married parents and adjunct professors at the community college, believe that the plaintiff was discussing the welfare of their children with the employees. The married professors have now filed a counterclaim against the plaintiff where they assert that he has created two websites pertaining to them which, *inter alia*, accuse the mother of child abuse and indicate that their children may be in extreme danger due to abuse. The professors also allege that the plaintiff has sent e-mails to administrators at the community college with links to these websites. They raise concerns that the websites are (1) defamatory, (2) interfere with their contractual relations with the community college, (3) a false light invasion of privacy, and (4)

1

established to intentionally cause them severe emotional distress. The professors are concerned with their well-being and the well-being of their three minor children, whose names were posted online along with various allegations about their physical, mental, and emotional well-being.

The professors have now moved for a preliminary injunction against the plaintiff to, *inter alia*, have him remove the two websites from the internet. In resolving this motion, the court must navigate the intricate balance between the professors' privacy, reputation, and contractual relationship rights versus the plaintiff's First Amendment freedom of speech rights.

The court has thoroughly reviewed all evidence in the record and has considered the parties' arguments in support of their respective positions. After reviewing the entire record, the court finds that the professors are entitled to preliminary injunctive relief because they have shown that they are likely to succeed on the merits of several of their causes of action and they have also demonstrated irreparable harm. In addition, balancing the non-moving party's interest and the public interest supports granting the motion. Accordingly, the court will grant the motion for a preliminary injunction and will direct the plaintiff to temporarily remove the websites from the internet pending resolution of this matter.

## I.     PROCEDURAL HISTORY

On July 16, 2019, the *pro se* plaintiff, Bennett J. Vonderheide, also known as "Daddy Justice" ("Mr. Vonderheide"), filed a civil complaint against Matthew Crill ("Mr. Crill") and Sara Crill ("Mrs. Crill") (collectively, "the Crills"), The Harrisburg Area Community College ("HACC"), and against various other members of the HACC administration. Doc. No. 1. In the complaint, Mr. Vonderheide appears to allege that the defendants defamed him and violated his rights under the First Amendment to the United States Constitution in connection with an April 11, 2019 visit that he made to the Lancaster Campus of the Harrisburg Area Community College ("HACC"). *See generally* Compl. at 3–13.

HACC filed an answer to the complaint on August 12, 2019, and then filed a motion for judgment on the pleadings on August 26, 2019. Doc. Nos. 3, 5. The Crills filed their own answer and a counterclaim against Mr. Vonderheide on September 10, 2019. Doc. No. 7.

In the counterclaim, the Crills allege that they have contracted with HACC to serve as adjunct professors. Answer, Affirmative Defenses, and Countercl. of Defs. Sara Crill and Matthew Crill to Pl.'s Compl. at 17, Doc. No. 7. They believe that Mr. Vonderheide operates and maintains two websites, saracrill.com and saracrillhacc.com (collectively, the "Website" as both addresses redirect to the same website), with the Website publishing false and defamatory statements regarding the Crills. For example, they assert that (1) the Website accuses Mrs. Crill of child abuse; (2) the Website's heading reads "EXTREME DANGER ALERT" in all capital letters and bold font; and (3) the Website has a page alleging the "rage exhibited by Sara" and asks the reader to be "exceptionally alert and aware. We have seen to [sic] many cases where distraught mothers hurt and in many cases actually murder their own children and then commit suicide." *Id.* at 18. The Website also identifies the Crills' minor children by name. *Id.*

The Crills allege that Mr. Vonderheide also emailed links to the Website to HACC administrators and encouraged them to visit the Website. *Id.* at 18, 19. Mr. Vonderheide also visited the HACC campus on September 6, 2019, and during this visit he posted signs on and around the campus for the saracrill.com website. *Id.* at 19. Apparently, Mr. Vonderheide and others acting on his behalf also posted these signs at other places in Lancaster City and East Lampeter Township. *Id.*

Based on these allegations, the Crills assert causes of action for (1) defamation, (2) intentional interference with contractual relations, (3) invasion of privacy, and (4) intentional

infliction of emotional distress. *Id.* at 20–24. They seek monetary damages and injunctive relief. *Id.* at 20–26.

Two days after filing the counterclaim, the Crills filed a motion for a preliminary injunction and for a temporary restraining order. Doc. No. 9. Mr. Vonderheide submitted a response to the motion for judgment on the pleadings on September 20, 2019. Doc. No. 13

The court held an evidentiary hearing on the motion for a preliminary injunction on September 25, 2019. On the day of the hearing, the Crills submitted their proposed findings of fact and conclusions of law. Doc. No. 14. Mr. Vonderheide represented himself during the hearing and requested that the court grant him electronic filing privileges.

On September 26, 2019, the court issued an order which, *inter alia*, (1) granted Mr. Vonderheide's oral request for electronic filing privileges, (2) directed the Crills to supplement their proposed findings of fact and conclusions of law by September 27, 2019, and (3) required Mr. Vonderheide to submit his response to the motion for a preliminary injunction or his own proposed findings of fact and conclusions of law by October 3, 2019. Sept. 26, 2019 Order at 1–2, Doc. No. 16. The Crills filed their supplemental proposed findings of fact and conclusions of law on September 27, 2019. Doc. No. 17. Mr. Vonderheide filed his answer to the Crills' counterclaim on September 30, 2019, and he filed his proposed findings of fact and conclusions of law on October 3, 2019. Doc. Nos. 18, 19.

This matter then became ripe for review, but on October 7, 2019, the Crills filed an amendment with the court revising and narrowing the relief requested in the motion for a preliminary injunction. Doc. No. 20. The Crills requested a court order directing Mr. Vonderheide to remove the Website, or in the alternative, an order prohibiting Mr. Vonderheide from directly or indirectly communicating the website addresses or their contents to the Crills' employer or

potential employers and ordering the removal of the Crills' minor children's names or statements or opinions regarding their purported mental or physical health or condition from the websites. *Id.*

On October 9, 2019, Mr. Vonderheide, in response to the Crills' amendment with the court, sent a letter to the court asking for this court to find that the Crills' injunctive action was frivolous. Doc. No. 21. Mr. Vonderheide asked the court to find the injunction to be moot, as he has redacted and removed the three minor children's names, and he has removed certain statements from the Website that alleged concerns about excessive computer time impacting the 6 year old's brain, and statements implying that Mrs. Crill might murder her own children and commit suicide. Mr. Vonderheide asked this court not to consider the Crills' amendment to this court, as it was after the timeframe that the court gave the Crills to file their proposed findings of fact and conclusions of law. In the interest of justice, this court has considered both the Crills' amendment to the court and Mr. Vonderheide's response letter to the court in ruling on the Crills' motion for a preliminary injunction.

## II.     FINDINGS OF FACT

After carefully considering all the evidence presented during the evidentiary hearings on September 25, 2019, and after assigning such weight to the evidence as the court deemed proper and disregarding the testimony that the court found to lack credibility, the pertinent facts are as follows:

### A.     <u>The Crills</u>

1.      Mr. Crill and Mrs. Crill are a married couple residing in Lancaster County, Pennsylvania. The Crills have three minor children ages 6, 11, and 16.

2.      The Crills are employed as adjunct professors for the Lancaster Campus of HACC. The Crills have had a contractual relationship with HACC and had one in the spring of 2018.

3.     The Crills and Mr. Crill's parents do not get along. The Crills have significant issues with Mr. Crill's father, David Crill ("paternal grandfather"), and his wife about the way paternal grandfather was involved in the Crills' children's lives.

4.     The Crills were upset that paternal grandfather would let their youngest son have unmonitored access to an iPad, on which he played violent video games.

5.     The Crills were also concerned after their youngest son mentioned that their daughter slept naked in the same bed as paternal grandfather, although the Crills acknowledge that they have no evidence that anything inappropriate took place.

6.     The Crills also wanted to limit their children's contact with paternal grandfather after he informed them that he would never consider their oldest son, who is Mr. Crill's stepson and Mrs. Crill's son, as part of Mr. Crill's family.

7.     The Crills attempted to set boundaries with paternal grandfather, which eventually led to the Crills severing their relationship with him.

8.     The Crills know Mr. Vonderheide as paternal grandfather's good friend, and as a result, they have been acquaintances with Mr. Vonderheide for several years.

9.     In the past, the Crills have paid Mr. Vonderheide to watch their house and pets while they were away in the past.

**B.     The Website**

10.     In May 2019, Mr. Vonderheide established the Website. Crill Aff. at ¶ 1.

11.     Mr. Vonderheide acknowledged on the record during the court's teleconference on September 19, 2019, that he was responsible for creating and maintaining the Website.

12.     The Website implies that Mrs. Crill abuses her three children and that the three children suffer from various mental and emotional conditions. The Website identified the Crills' minor children by name, but these names have now been removed or redacted.

13.     Mr. Vonderheide further acknowledged during the evidentiary hearing on September 25, 2019, that a reasonable review of the Website would cause people to be concerned that the mother was abusing the three children and that an audio clip on the Website shows this abuse.

14.     The heading for the Website is "An Expose on Sara Crill to Protect Her Children."

15.     The Website also has a section titled, "EXTREME DANGER ALERT" which states that Mrs. Crill experiences periods of rage and is consumed by the prestige of her position as a professor at HACC and the image of being a perfect mother such that her children need protection now and in the future.

16.     The Website states that one of the Crills' children "gets the brunt of her parents rage and anger."

17.     The Website contends that the Crills "purposefully addicted" another of their three children to computer games and the internet.

18.      The Website alleges that this child is unable to interact normally with others, is "withdrawn," and is "unable to be reached through normal methods." The Website asserts that the child is an "emotional crush."

19.     With respect to the Crills' oldest child, the Website states that he shows "signs of emasculation."

## C.    The Evidentiary Hearing

20.     The evidence presented to the court through the Crills' testimony (which the court found credible) demonstrated that Mrs. Crill does not abuse her children, the children are not in imminent danger from Mrs. Crill or Mr. Crill, they are not in danger that would necessitate their removal from the Crill home, and the Crills' 6-year-old child does not suffer from brain injury or a mental health condition.

21.     The statements on the Website are false, and the Crills did not authorize the Website or its contents.

22.     The voicemail on the Website from the Crills' daughter was from an incident a few years ago, when the daughter got in trouble for not cleaning her cat's litterbox. The bag referenced as being thrown at the daughter was just a plastic grocery bag, which Mrs. Crill was throwing on the table not at her daughter, and that her daughter does not claim in the voicemail to be hurt.

23.     The Crills' daughter has been seeing a therapist since she stopped seeing paternal grandfather, and the therapist is aware of the Website and voicemail at issue.

24.     Various mandatory reporters connected with the Crills' children and Children and Youth have been made aware of the Website, which includes the recording of the Crills' daughter.

25.     Children and Youth has not found that the Crills have done anything to warrant an investigation.

26.     The Website has greatly impacted Mrs. Crill's emotional wellbeing, as it has damaged her reputation and she has been forced to defend herself and go into details about her personal life and her family's personal lives with various acquaintances.

27. The Website and Mr. Vonderheide's actions have caused Mrs. Crill to suffer damage to her business and contractual interests as there has been a reduction in her hours and compensation at HACC.

28. Paternal grandfather testified that he was distraught that he no longer sees his grandchildren, that he never slept naked with his granddaughter, and that he believes the Website's allegation that the Crills' oldest son is emasculated is true and therefore not defamatory.

29. Paternal grandfather has not reviewed the entire Website, but he supports efforts to help his grandchildren and allow him to play a role in their lives again.

30. Paternal grandfather has never contacted Children and Youth about any concerns he has for his grandchildren's safety, as he does not believe that Children and Youth is qualified to conduct such an investigation. Paternal grandfather has also never contacted the police with his concerns, as he is afraid that he would never see his grandchildren again if he did so.

### D. The Further Publication of the Website

31. On or about May 30, 2019, Mr. Vonderheide e-mailed links to the Website to one or more administrators at HACC which stated: "Have you seen saracrill.com. Very disturbing."

32. On or about September 6, 2019 and September 18, 2019, Mr. Vonderheide went to the HACC Lancaster campus, where he posted yard signs on and around the campus that said "saracrill.com."

33. The posting of the signs corresponded to HACC-fest, an annual event where a significant number of individuals associated with HACC such as students, alumni, professors, and administrators were present.

34. Additional signs were posted around other entities where the Crills were employed.

## III.    DISCUSSION

### A.    Standard – Motion for a Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008); *see Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) ("Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." (citation and internal quotation marks omitted)). A district court should not grant a motion for preliminary injunctive relief unless the moving party shows "(1) a likelihood of success on the merits; (2) that [the moving party] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc.* 369 F.3d at 708 (citing *Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153, 158 (3d Cir. 1999)). Additionally, to obtain a preliminary injunction, the moving party must establish its entitlement to such relief by clear evidence on the merits of its claim. *See Winter*, 555 U.S. at 22 (explaining that "a preliminary injunction . . . is . . . an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). "In addition, the district court. . . should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017).

### B.    Likelihood of Success on the Merits

#### 1.    Defamation

To sustain a defamation claim under Pennsylvania law, a plaintiff must show "(1) [t]he defamatory character of the communication[;] (2) [i]ts publication by the defendant[;] (3) [i]ts application to the plaintiff[;] (4) [t]he understanding by the recipient of its defamatory meaning[;]

and (5) [t]he understanding by the recipient of it as intended to be applied to the plaintiff." *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (citations omitted); 42 Pa. C.S. § 8343(a). In terms of the defamatory character of the communication, "[a] statement is defamatory if 'it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Id.* at 136 (quoting *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001)). Here, the statements on the Website that the Crills' children are in "imminent danger" from their parents, that the children may need to be removed from their home, and other statements about the Crills' unsafe parenting certainly serve to harm the reputation of the Crills and their family. The court therefore finds that the Website contains numerous statements of a defamatory character pertaining to the Crills.

Furthermore, given that the statements are published on a Website that is generally available to the public, whose link has been emailed out to the Crills' employers, and whose web address was posted on yard signs in various locations near where the Crills live and work, the court also finds that these statements are being sufficiently published. *See Flaxman v. Burnett*, 574 A.2d 1061, 1066 (Pa. Super. 1990) (following Restatement (Second) of Torts § 577(1) definition of "publication" in defamation action and explaining that "publication occurs whenever a defamatory statement is communicated to another person"). In terms of publication by the counterclaim defendant, Mr. Vonderheide stated on the record during the September 19, 2019 teleconference that he takes full responsibility for the creation and maintenance of the Website, and he reaffirmed this during the September 25, 2019 evidentiary hearing.

Additionally, given that the Website explicitly names the Crills, the information on the site is clearly applicable to them. Furthermore, given the allegations of child abuse and the fact that the Website calls into question whether the Crills' children are safe, a recipient would understand

the defamatory nature and its application to the Crills. Mr. Vonderheide acknowledged as such when he admitted that a reasonable review of the Website would cause viewers to be concerned about the well-being of the three children.

In his proposed findings of fact, Mr. Vonderheide argues that the Crills do not have a reasonable likelihood of success on the merits because the statements that they are challenging on the Website are true. Pl.'s Proposed Findings of Fact and Conclusions of Law at 8. He also appears to assert that because he does not use the word "abuse," his statements are not defamatory. *Id.*

Despite Mr. Vonderheide not using the word "abuse," the only conceivable impression from reading the "Mission Statement" is that the Crills are abusing the children. Mr. Vonderheide states that the children are in "imminent danger," that the Crills moved their family away from people who "might witness and report," and that the children need to be removed from the Crills' custody. He also indicates that the reader will hear a plea from a "terrified little girl." Clearly the defamatory meaning from these statements is that the Crills are abusing their children; he does not even offer another possible interpretation of these statements.

While Mr. Vonderheide asserts that the Website contains his journalistic opinion, there is nothing on the Website that suggests that the statements about abuse are merely his opinions, as opposed to facts. Pl.'s Proposed Findings of Fact and Conclusions of Law at 1. Merely labeling a statement as "opinion" does not make it so. The Website contains what resembles transcripts of dialogues, which a reasonable viewer of the Website would find to be recounting actual conversations that took place, not simply matters of opinion. The Website's mission statement is to "[r]elay critical information to protect these children from imminent danger as evidenced herein." Such a statement clearly implies that the Website is one of fact and evidence, not opinion.

In *Milkovich v. Lorain Journal Co.*, the Supreme Court allowed a defamation action to go forward, holding that reasonable fact-finder could interpret the so-called expressions of opinion as including false assertions as to factual matters. 497 U.S. 1, 18 (1990). *Milkovich* involved statements made in a newspaper column that "[Milkovich] 'lied at the hearing after . . . having given his solemn oath to tell the truth.'" *Id.* at 21–22. The Court held that "[t]his is not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that petitioner committed the crime of perjury. Nor does the general tenor of the article negate this impression." *Id.* at 21. Similarly, in this case, the statements on the Website are not the sort of loose, figurative, or hyperbolic language which would negate the impression that the Website creator is maintaining that the Crills have and are committing child abuse. Rather, the Website distinctly (and apparently deliberately) creates this impression.

While Mr. Vonderheide argues that the Website contains his journalistic opinion, and thus he is entitled under the First Amendment to freely express his opinions, the freedom of speech is not absolute. Not all speech is entitled to full constitutional protection, particularly not defamation. "A determination whether a particular speech is the kind that merits constitutional protection depends upon whether the subject of the speech is a public official or figure, or, if a private person, whether the speech is on a matter of public or private concern." A*yala v. Washington*, 679 A.2d 1057, 1062–63 (D.C. 1996) (citing *Philadelphia Newspapers v. Hepps*, 475 U.S. 767, 773–75 (1986)).

To determine whether someone is a public or private figure, this court must look to whether an individual has achieved general fame or notoriety in a community, or whether an individual has thrust his or her self into a particular controversy. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). As the Supreme Court has explained:

Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

*Id.*

In addition,

[a]bsent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.

*Id.* at 352.

In this case, it is apparent that the Crills are not individuals of general fame or notoriety, and therefore this court must look at their role in the controversy. In *Gertz*, the Court ruled that because Gertz did not "thrust himself into the vortex of th[e] public issue, nor did he engage the public's attention in an attempt to influence its outcome," Gertz could not be deemed a public figure. *Id.* Similarly, the Crills did not thrust themselves into this controversy about their parenting. Rather, Mr. Vonderheide created the Website specifically targeting the Crills, and in part targeting their relationship with their employer, HACC, without their permission or consent. While the controversy giving rise to the defamation is the Crills' parenting skills, this was not something the Crills brought up for public attention or debate. Thus, in this context the Crills are not public figures.

Furthermore, the Website and the speech at issue is not a matter of public concern. In *Charalambopoulos v. Grammer*, the court held that the tweets in question, which similarly

contained allegations of abuse, did not touch on issues of public concern. The court held that

"although at a general level the public is concerned about preventing domestic violence and

ensuring that crimes are prosecuted, Grammer has failed to show that the 'tweets' in question . . .

are communications about an issue related to public health, safety, or well-being." No. 3:14-CV-

2424-D, 2015 WL 390664, at *10 (N.D. Tex. Jan. 29, 2015). In reaching this decision, the court

relied in part on *Pickens v. Cordia*, 433 S.W.3d 179 (Tex. App. 2014), which found that

> issues of addiction, parental abuse, fathers' responsibilities to their children and
> family dynamics' generally may be matters of public concern, [the defendant's]
> blog is not a general purveyor of information on those subjects. . . . We cannot
> conclude that statements of private life, such as those recounted in [defendant's]
> blog, implicate the broader health and safety concerns or community well-being
> concerns . . . .

*Id.* (alterations in original) (quoting *Pickens*, 433 S.W.3d at 182). Similarly, in this case, while

issues of child abuse may generally be matters of public concern, Mr. Vonderheide's Website is

not a general purveyor of information on this subject, which implicates broader health and safety

issues or community well-being concerns. Rather, the focus on the Crills' family dynamics in this

instant case is a matter of private concern. Accordingly, the court finds that the Crills are likely to

succeed on the merits of their defamation claim.[1]

### 2. Intentional Interference with Business or Contractual Relations

The elements of tortious interference with a contractual relationship are as follows:

> (1) the existence of contractual relationship, or prospective contractual relationship
> between a complainant and a third party; (2) purposeful action by the defendant
> specifically intended to harm the existing relation, or to prevent a prospective
> relation from occurring; (3) the absence of privilege or justification on the part of

---

[1] The Crills incorporated the entire Website into their request for injunctive relief and pointed out specific examples of what they considered to be defamatory statements. They argue that the Website, as a whole, defames them. In *Zartman v. Lehigh County Humane Society,* the court held that "[o]ur use of particular examples is not intended to imply that only those examples may be defamatory. Rather, we have considered the effect the entire article is fairly calculated to produce." 482 A.2d 266, 269 n.3 (Pa. Super. 1984). Similarly, in this case, the court considered the effect that the Website, as a whole, is calculated to produce. While certain statements on the Website may be factual and truthful and others may be a matter of public record which would be fine for Mr. Vonderheide to republish in a different context, the context in which such statements are currently displayed is defamatory.

the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004) (citations and internal quotation marks omitted). In this case, it is apparent from the Crills' testimony, from their affidavit, and from the allegations on the Website, that the Crills have a contractual relationship with a third party, namely their employer HACC. The Crills' affidavit and testimony also inform this court that HACC has reduced Mrs. Crill's hours and compensation since Mr. Vonderheide put up the Website. The questions that remain are whether Mr. Vonderheide purposefully acted to harm the Crills' existing business relationship with HACC, and whether Mr. Vonderheide acts in the absence of justification or privilege.

Concerning the first question, Mr. Vonderheide took purposeful action to harm the Crills' relationship with HACC because he, *inter alia*, created the Website, sent emails to HACC administrators with links to the Website and the comment "Very disturbing", and posted yard signs with the Website's address on and around HACC intending to entice HACC associates to go to the Website. As for the second question, Mr. Vonderheide committed these acts without justification or privilege, including involving HACC on a matter that should have remained a private family issue. Accordingly, this court finds that the Crills are likely to succeed on the merits of their tortious interference with contractual relations claim.[2]

---

[2] Mr. Vonderheide argues that the Crills are not likely to succeed on the merits of their claim as he is merely giving HACC truthful information. Mr. Vonderheide's 10-9-19 Ltr. to the Court, Doc. No. 21. In *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, the court held that "[t]he conveyance of truthful information cannot reasonably be deemed to be 'improper' interference. It would be strange, indeed, to deem disclosures of mere truth to be actionable." 20 A.3d 468, 479 (Pa. 2011). The court has already found that the Website's allegations paint an untruthful picture, and therefore the truth cannot be used as a valid defense as to the preliminary injunction.

### 3.    False Light Invasion of Privacy

The elements of a false light invasion of privacy claim are as follows: (1) the defendant makes a false communication; (2) the defendant acted with at least reckless disregard; (3) the communication would be highly offensive to a reasonable person; and (4) publicity or widespread dissemination of the communication. *Martin v. Finley*, 349 F. Supp. 3d 391, 423–24 (M.D. Pa. 2018) (citations omitted). In this case, Mr. Vonderheide, through his Website makes false communications concerning the Crills and their minor children, including false communications that a reasonable viewer of the Website would take to be that the Crills abuse their children and that the three children suffer from various mental and emotional health issues. Mr. Vonderheide acted with at least reckless disregard when making these communications, seemingly indifferent as to how the content of the Website would impact the mental and emotional well-being of the Crills, and of their three minor children. Given that allegations of child abuse would highly offend any reasonable person and that Mr. Vonderheide disseminated his communications to the world via his publicly accessible Website, and further promoted the Website to the public via yard signs advertising the Website within Lancaster County, this court finds that the Crills would likely succeed on the merits of their false light invasion of privacy claim.

### 4.    Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress, the Crills must establish that: (1) Mr. Vonderheide's conduct was intentional and reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d. Cir. 1979). Because there is not enough evidence in the record at this time to determine how severe the Crills' emotional distress

is, the court cannot find that the Crills have a likelihood of success on the merits with regards to this cause of action.

### C.     Irreparable Harm

Concerning a showing of irreparable harm, "the plaintiff must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Thus, to support the granting of a request for a preliminary injunction, a plaintiff must demonstrate a "clear showing of immediate irreparable injury . . . or a presently existing actual threat; (an injunction) may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (internal citations and quotations omitted).

Further, if the threatened harm is compensable with money damages, a movant seeking preliminary injunctive relief has not demonstrated irreparable harm and the court should not issue a preliminary injunction. *See Frank's GMC Truck Ctr., Inc. v. G.M.C.*, 847 F.2d 100, 102–03 (3d Cir. 1998) ("The availability of adequate monetary damages belies a claim of irreparable injury."); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief might be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

The Third Circuit has explained that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998). In this case, the Crills' reputation as parents and their reputations at HACC are being harmed every day that the Website remains operational. The Crills'

contractual relationships with their employer and with prospective employers are being harmed, and their three minor children likely suffer from the allegations on the Website as well. Therefore, the court finds that irreparable injury takes place every day that the Website remains operational.

### D.     Balance of Harm/Whether Non-Moving Party Will Suffer Greater Harm

Despite the Crills showing of irreparable harm, this court must also consider Mr. Vonderheide's First Amendment rights. As the Supreme Court held in *New York Times Co. v. Sullivan*, "[l]ibel can claim no talismanic immunity from constitutional limitations; it must be measured by standards that satisfy the First Amendment. . . . The constitutional safeguard [for speech and press] was fashioned to assure unfettered interchange of ideas for bringing about of political and social changes desired by the people." 376 U.S. 254, 269 (1964) (citation and internal quotation marks omitted). However, as discussed earlier in this opinion, not all speech enjoys the full protection of the First Amendment. *See* discussion and cases cited *supra* Part III.B.1. While Mr. Vonderheide does have a First Amendment right to free speech, because the Crills are private figures, the Website touches on a matter of private concern, and because the Website contains untrue allegations about the Crills, any harm to Mr. Vonderheide from infringing on his First Amendment rights is minimal compared to the harm that the Crills are suffering.

### E.     Public Interest

It is only speech on the matters of public concern that is "at the heart of the First Amendment's protection." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978) (citing *Thornhill v. Alabama*, 310 U.S. 88, 101 (1940)). In contrast, "speech on matters of purely private concern is of less First Amendment concern." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) (citation omitted). Given that this case deals with private figures and issues of private concern, "we must employ the approach approved in *Gertz* and balance the State's

interest in compensating private individuals for injury to their reputation against the First Amendment interest in protecting this type of expression." *Id.* at 757.

The public interest in this case is similar to that in *Gertz*, as it is "strong and legitimate." *Gertz*, 418 U.S., at 348. As Mr. Justice Stewart wrote, "the protection of [the individual's] own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966) (Stewart, J., concurring). In this case there is no threat to the First Amendment's primary concern of protecting free and robust debates on public issues. Additionally, in this case, the public interest in protecting citizens, especially minors, and their reputations from widespread publication of false information about them, is of great value. Therefore, this court finds that these concerns favor the granting of the preliminary injunction. Furthermore, the public also has an interest in maintaining the sanctity of the parent-child relationship from interference by third parties, and in protecting the Crills' contractual relationship with their employers. Thus, public interest weighs in favor of granting the preliminary injunction, even considering the First Amendment's protections and concerns.

## IV.    CONCLUSION

The Crills are required to clearly show that they are entitled to the extraordinary remedy of a preliminary injunction. Regarding their defamation, tortious interference with contractual relationships, and false light invasion of privacy claims, the Crills have demonstrated that they are likely to succeed on the merits of these claims.[3] Additionally, they have demonstrated that they

---

[3] The defamation claim is not the sole basis of this preliminary injunction, so this court does not need to reach the issue of whether it is appropriate to enjoin defamation alone preliminarily, when it is not coupled with a tortious interference with an existing and prospective contractual relations claim or another tort. *See Vizant Techs., LLC v. Whitchurch*, Civ. A. No. 15-431, 2015 WL 1933759, at *18 (E.D. Pa. Apr. 29, 2015) ("We need not reach the issue whether it is appropriate to enjoin any defamation preliminarily when it is not coupled with a breach of contract or related tort."). This case is also distinguishable from *Kramer v. Thompson*, 947 F.2d 666, 668 (3d Cir. 1991), because

are likely to suffer irreparable injury if the court does not issue a preliminary injunction, and the court's balancing of the parties' respective harms and consideration of whether a preliminary injunction is in the public interest all support the granting of relief. Accordingly, the court will grant the motion for a preliminary injunction.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

the Website is currently functioning, Mr. Vonderheide is continuously contacting the Crills' employer about this case, and the court is not imposing an injunction restraining future speech or compelling a letter of retraction.